UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CARLOS C. QUEVEDO, <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL SULLIVAN, WARDEN, SOUTH DAKOTA STATE PENITENTIARY; AND THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, <br><br> Defendants. | 5:22-CV-05021-RAL <br><br><br> OPINION AND ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS AND GRANTING DEFENDANTS' MOTION TO DISMISS |

Plaintiff Carlos Quevedo ("Quevedo") pled guilty in state court to one count of second-degree murder and received a ninety-year sentence. Quevedo has now filed a petition of habeas corpus under 28 U.S.C. § 2254 claiming that his sentence was wrongfully imposed under the Eighth Amendment and that he received ineffective assistance of counsel in violation of the Sixth Amendment. Doc. 1. Defendants Warden Daniel Sullivan of the South Dakota State Penitentiary and the Attorney General of South Dakota ("the State") responded, Doc. 10, and filed two motions to dismiss for failure to state a claim and procedural default, Doc. 11; Doc. 12. For the reasons set forth below, this Court denies Quevedo's § 2254 petition and grants the State's motions to dismiss.

I.    **Procedural Background**

In February 2017, Quevedo was indicted on alternate counts of first-degree murder, first-degree murder while engaged in the perpetration of a robbery, and second-degree murder, as well as first-degree robbery. Doc. 1 at 8; Criminal, 17-242 at 15–16; State v. Quevedo, 947 N.W.2d

402, 404 (S.D. 2020). The charges stemmed from the killing of Kasie Lord while Quevedo and another juvenile were stealing a case of beer from the Loaf 'N Jug in Rapid City, South Dakota. Doc. 11 at 1; Doc. 12 at 1; Doc. 13 at 10; Criminal, 17-242 at 9–10; Quevedo, 947 N.W.2d at 403–04. At the time of the incident, Quevedo was seventeen years and four months old, but ultimately proceeded in adult court. Doc. 1 at 13; Doc. 11 at 1; Doc. 12 at 1; Criminal, 17-242 at 113–14; Quevedo, 947 N.W.2d at 403. In March 2018, after discussions with counsel, Quevedo decided to plead guilty as an adult to second-degree murder and, in exchange, the state would drop the other charges and recommend a term-of-years sentence. Doc. 1 at 8–9; Doc. 1-1 at 4–8; Criminal, 17-242 at 124, 133–34. Quevedo received a sentence of 90 years in prison, Doc. 1 at 9; Quevedo, 947 N.W.2d at 406, making him eligible for parole in March 2061, when he will be 62 years old, S.D. Dep't Corr., Offender Locator, https://doc.sd.gov/adult/lookup/ (last visited Sept. 22, 2022); Quevedo, 947 N.W.2d at 406.

On direct appeal to the Supreme Court of South Dakota, Quevedo raised two issues: Whether the state court's sentence violated categorical Eighth Amendment sentencing restrictions; and whether the state court's sentence was grossly disproportionate to his crime in violation of the Eighth Amendment. Doc. 1 at 9; Quevedo, 947 N.W.2d at 406. See generally Appellant's Brief, Quevedo, 947 N.W.2d 402 (No. 28608), 2019 WL 9512912 (outlining Quevedo's argument on appeal). The Supreme Court of South Dakota affirmed the imposed sentence. Doc. 1 at 9; Quevedo, 947 N.W.2d at 411. No ineffective assistance of counsel claim was raised on direct appeal. Doc. 1 at 9; Doc. 1-1 at 18. See generally Quevedo, 947 N.W.2d 402 (discussing Eighth Amendment claims only); Appellant's Brief, supra (same).

In April 2021, Quevedo filed a state habeas corpus action contending that his Sixth Amendment right to effective assistance of counsel was violated based on the advice his trial

counsel provided and failed to provide regarding the plea agreement. Doc. 1-1 at 2–13; Habeas Case, 21-540 at 1. A state judge dismissed Quevedo's habeas petition and refused to issue a certificate of probable cause on July 12, 2021. Doc. 1-1 at 29–40; Habeas Case, 21-540 at 64–75. Quevedo then filed a motion for a certificate of probable cause and an amended motion on July 21 and July 26, 2021, respectively. Doc. 1-1 at 23–26, 41–46. On July 26, 2021, Quevedo filed a "notice of appeal" of the decision denying his petition with the trial court. Doc. 1-1 at 47. The Supreme Court of South Dakota denied the appeal for failure to comply with SDCL § 21-27-18.1.[1] Doc. 1-1 at 49. Quevedo then wrote to state court Judge Craig A. Pfeifle stating that he had not received a decision on his amended motion for probable cause. Doc. 1-1 at 58. Judge Pfeifle informed Quevedo that his motion had been denied. Doc. 1-1 at 59. Quevedo then filed a motion for probable cause with the Supreme Court of South Dakota on December 3, 2021. Doc. 1-1 at

---

[1] This section of the South Dakota Codified Laws states:

> A final judgment or order entered under this chapter may not be reviewed by the Supreme Court of this state on appeal unless the circuit judge who renders the judgment or a justice of the Supreme Court issues a certificate of probable cause that an appealable issue exists. A motion seeking issuance of a certificate of probable cause shall be filed within thirty days from the date the final judgment or order is entered. The issuance or refusal to issue a certificate of probable cause is not appealable. However, a party may, upon the circuit court judge's refusal to issue a certificate of probable cause, file a separate motion for issuance of a certificate of probable cause with the Supreme Court within twenty days of the entry of the circuit judge's refusal. Any party filing a motion with the Supreme Court shall serve a copy of the motion upon the opposing party, who shall have ten days to respond. The applying party shall then have five days to reply to such response. If a certificate of probable cause is issued the appeal may be brought by an applicant or the state within thirty days after entry of the certificate of probable cause.
>
> Service of either a motion for a certificate of probable cause or of an appeal must be made upon both the attorney general and the appropriate state's attorney when the motion is made or the appeal is taken by the party seeking the habeas corpus relief.

SDCL § 21-27-18.1. Quevedo's appeal was dismissed because the decision was not appealable unless Quevedo filed a timely motion for issuance of probable cause with the Supreme Court of South Dakota. Id.

50–56. The court denied and dismissed the motion on December 8, 2021, again for failure to comply with SDCL § 21-27-18.1. Doc. 1-1 at 57. Quevedo sent another letter on December 12, 2021, asking Judge Pfeifle to refile the denial so that he could then file a timely motion for certificate of probable cause. Doc. 1-1 at 61–62. Judge Pfeifle responded and explained that the motion was initially not denied as untimely, but rather because of a failure to comply with SDCL § 21-27-18.1, so refiling would not solve the issue. Doc. 1-1 at 63–64. Quevedo then made a request for reconsideration to which Judge Pfeifle did not respond. Doc. 1-1 at 65-66.

Quevedo filed his § 2254 petition with this Court on February 22, 2022. Doc. 1. He raises three issues: 1) whether the circuit court's sentence violated categorical Eighth Amendment sentencing restrictions; 2) whether the circuit court's sentence was grossly disproportionate to his crime in violation of the Eighth Amendment; and 3) whether he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Doc. 1 at 6–7, 13. Quevedo petitions the Court to "vacate [his] conviction and remand for further proceedings." Doc. 1 at 20. The State moved to dismiss, Doc. 11; Doc. 12, to which Quevedo responded, Doc. 13, and the State replied, Doc. 15; Doc. 16. This Court now denies Quevedo's petition for writ of habeas corpus and grants the State's motions to dismiss for the reasons discussed below.

## II.  Discussion

### A.  Standard of Review Under § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 sets limitations "on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). "Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.' Sections

2254(b) and (c) provide that a federal court may not grant such applications unless, with certain exceptions, the applicant has exhausted state remedies." Id. (quoting § 2254).

"If an application includes a claim that has been 'adjudicated on the merits in State court proceedings,'" additional restrictions apply. Id. (quoting § 2254(d)). Section 2254(d) provides that an application shall not be granted unless adjudication of such a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court of the United States has described the § 2254(d) standard as a "highly deferential standard," "difficult to meet," and demanding "that state-court decisions be given the benefit of the doubt." Cullen, 563 U.S. at 181 (cleaned up and citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). The petitioner in a § 2254 case bears the burden of proof. Cullen, 563 U.S. at 181. However, because § 2254(d)'s demanding standard of review only applies if the claim was adjudicated on the merits, when the state court did not resolve the claim on the merits, federal courts review the petitioner's claim de novo unless the claim was defaulted. See Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011). This Court analyzes in turn each ground Quevedo raises under § 2254.

## B. Grounds for Relief

### 1. De Facto Life Sentence in Violation of the Eighth Amendment

Quevedo challenges his 90-year sentence based on the Supreme Court ruling in Graham v. Florida, which found that life in prison without parole for non-homicide juvenile offenses violates

the Eighth Amendment, 560 U.S. 48, 71–75 (2010), and Miller v. Alabama, which found "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments,'" 567 U.S. 460, 465 (2012).

In Graham, a juvenile was sentenced to life imprisonment for armed burglary and 15 years for attempted armed robbery following a conviction for violation of probation. 560 U.S. at 57. Because Florida had abolished its parole system, Graham had no possible opportunity for early release, except executive clemency. Id. The Supreme Court used the categorical approach in analyzing whether the Constitution permits such sentencing schemes. Id. at 61–62 (noting that the challenge was not "to a particular defendant's sentence, but [rather] a sentencing practice itself"). The Supreme Court observed that the age of the offender and the nature and circumstances of the crime were important to consider in determining what sentence is appropriate for juveniles. Id. at 62–69. The Supreme Court noted many differences between juveniles and adults; juveniles have an undeveloped sense of responsibility, are more susceptible to negative influences, and do not have fully developed character traits deserving of the most severe punishment. Id. at 68; see also Roper v. Simmons, 543 U.S. 551, 569 (2005) (comparing further differences); Thompson v. Oklahoma, 487 U.S. 815, 835–36 (1988) (same). As for the nature of the offense, the Supreme Court reiterated that juveniles "who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving" of life imprisonment without parole as compared to murderers. Graham, 560 U.S. at 69; see also Kennedy v. Louisiana, 554 U.S. 407, 421 (2008) (applying standard to adult defendant). Finally, penological goals did not justify juvenile sentences of life without parole because juveniles are less culpable and less susceptible to deterrence, and because a State should not predetermine that a juvenile is incapable of rehabilitation. Graham, 560 U.S. at 71–75.

6

The Supreme Court in <u>Graham</u> ultimately held that the Eighth Amendment prohibits the imposition of life imprisonment without parole for juveniles in nonhomicide crimes. <u>Id.</u> at 74. The Supreme Court did not focus as much on the nominal classification of the sentence, whether a life sentence or term-of-years, but found it unconstitutional to sentence a nonhomicide juvenile offender to a "sentence [that] guarantees [the offender] will die in prison without any meaningful opportunity to obtain release." <u>Id.</u> at 79. The Court clarified the scope of its prohibition:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

<u>Id.</u> at 75. Thus, if the State imposes a life sentence on a juvenile nonhomicide offender, it must provide the juvenile "with some realistic opportunity to obtain release before the end of that term." <u>Id.</u> at 82.

However, the "meaningful opportunity to obtain release" standard outlined in <u>Graham</u> does not extend to juveniles such as Quevedo who have been convicted of murder. <u>See</u> <u>Graham</u>, 560 U.S. at 82; <u>Garza v. Frakes</u>, No. 8:17CV474, 2018 WL 1710183, at *3 (D. Neb. Apr. 9, 2018) ("[Petitioner] is unable to cite to any Supreme Court authority clearly holding that a discretionary sentence like his—a term of years for murder with the possibility of parole within his lifetime—is equivalent to a life sentence without the possibility of parole and is cruel and unusual punishment in violation of the Eighth Amendment."); <u>Laird v. Ryan</u>, No. CV-17-00482-PHX-JAT, 2018 WL

4112150, at *1–2 (D. Ariz. Aug. 29, 2018) (holding that <u>Graham</u> does not apply to petitioner's 129-year aggregate sentence for various crimes and a consecutive life sentence with the possibility of release after twenty-five years in prison for a homicide offense). The Eighth Circuit has noted that <u>Graham's</u> holding is limited by its terms. <u>United States v. Spires</u>, 628 F.3d 1049, 1055 n.3 (8th Cir. 2011) (refusing to "broaden the analysis" of <u>Graham</u> to determine the constitutionality of using prior convictions to enhance the sentence of a convicted adult); <u>United States v. Scott</u>, 610 F.3d 1009, 1018 (8th Cir. 2010) (noting that <u>Graham</u> established a constitutional limit only "on certain sentences"). Thus, Quevedo does not qualify for relief under <u>Graham</u>.

Even if the principles of <u>Graham</u> were to apply to Quevedo, <u>Graham</u> would not justify granting § 2254 relief to Quevedo. Many courts, both state and federal, have wrestled with the application of <u>Graham's</u> holding to a term-of-years sentence when the term does not hold promise for parole or release. <u>See, e.g.</u>, <u>Bunch v. Smith</u>, 685 F.3d 546, 552 (6th Cir. 2012) ("[C]ourts across the country are split over whether <u>Graham</u> bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy."). However, Quevedo's sentence involves the possibility of parole within his life expectancy.

When a term-of-years sentence includes the possibility of parole, courts have found no <u>Graham</u> violation if the defendant becomes eligible for parole within his expected lifetime. <u>See, e.g.</u>, <u>United States v. Mathurin</u>, 868 F.3d 921, 935 (11th Cir. 2017) (holding that the defendant's sentence comported with <u>Graham</u> when, taking into account the defendant's maximum good-time credit available, he could be released within his expected lifetime at age 67); <u>Hart v. Beard</u>, No. SACV152129RPLA, 2016 WL 8456753, at *5 (C.D. Cal. Nov. 16, 2016) (holding that petitioner's sentence did not violate any constitutional standards because he "still had significant life

8

expectancy" after age 51 when he becomes eligible for parole), <u>report and recommendation adopted</u>. No. SACV152129RPLA, 2017 WL 901086 (C.D. Cal. Mar. 6, 2017); <u>Springer v. Dooley</u>, No. 3:15-CV-03008, 2015 WL 6550876, at *5–8 (D.S.D. Oct. 28, 2015) (holding that a 261-year sentence where the defendant would be eligible for parole at the age of 49 was not a de facto life without the possibility of parole sentence as prohibited by <u>Graham</u>); <u>Moulayi v. Long</u>, No. SA CV 13-31-JLS (PLA), 2015 WL 4273332, at *14 (C.D. Cal. Feb. 3, 2015) ("Because petitioner's sentence did not mandatorily impose life without parole and allows for the possibility of parole well within his expected lifetime, it does not violate constitutional norms."), <u>report and recommendation adopted</u>, 2015 WL 4304764 (C.D. Cal. July 10, 2015); <u>Silva v. McDonald</u>, 891 F. Supp. 2d 1116, 1131 (C.D. Cal. 2012) ("Notwithstanding the holdings in <u>Roper</u>, <u>Graham</u>, or <u>Miller</u>, this Court is not aware of any controlling Supreme Court precedent which holds, or could be construed to hold, that the sentence at issue here of 40-years-to-life with the possibility of parole [at the earliest at age 55, but not later than age 60], for a juvenile who was 16 years old at the time of the nonhomicide crime, violates the Eighth Amendment.").

Consistent with that logic, courts have held that when parole eligibility under a term-of-years sentence occurs close to or exceeds the defendant's life expectancy, the sentence violates <u>Graham</u>. <u>See, e.g.</u>, <u>Moore v. Biter</u>, 725 F.3d 1184, 1191–92 (9th Cir. 2013) (finding sentence of 254 years with no opportunity for parole eligibility within defendant's lifetime "materially indistinguishable from a life sentence without parole"); <u>California v. Caballero</u>, 282 P.3d 291, 295 (Cal. 2012) (finding a 110-year sentence equates to a de facto life sentence and focusing on whether the parole eligibility date falls outside the defendant's life expectancy); <u>Floyd v. Florida</u>, 87 So. 3d 45, 46–47 (Fla. Dist. Ct. App. 2012) (per curiam) (holding defendant received a de facto life sentence where he would not be eligible for parole until age eighty-five which exceeded his

life expectancy).    Similarly, this Court previously reasoned that "term sentences virtually guaranteeing an offender will die in prison without meaningful opportunity for release could be considered a life sentence for the purpose of applying Graham or Miller." Boneshirt v. United States, No. 13-CIV–3008–RAL, 2014 WL 6605613, at *8 (D.S.D. Nov. 19, 2014).

Quevedo also invokes Miller v. Alabama to argue that his sentence violates the Eighth Amendment.   Miller consolidated the appeals of two juveniles, both of whom had received mandatory life sentences without parole for murders committed at age fourteen.  567 U.S. at 465. The Supreme Court reemphasized the "significant gaps" that exist between juveniles and adults and required sentencing courts to consider youth mitigating factors—as well as the "characteristics and circumstances attendant" to the crime committed—when imposing a state's harshest sentence on juveniles.  Id. at 476–77.  Because the sentences imposed in Miller were mandatory and wholly precluded consideration of mitigating youth factors, the Supreme Court invalidated the sentences under the Eighth Amendment.  However, the Supreme Court noted in the very first paragraph of Miller that there is a significant difference between mandated life imprisonment without the possibility of parole and the lesser sentence of "life *with* the possibility of parole."  Id. at 465.

Quevedo was sentenced in March 2018 when he was 18.  Based on the sentence imposed, Quevedo would be eligible for parole in March 2061, 43 years later.  S.D. Dep't Corr., supra. Although it is impossible to determine precisely how long any one person has to live, the question of life expectancy for those in prison presents itself periodically, including previously before with this Court.  See Springer, 2015 WL 6550876, at *7; Boneshirt, 2014 WL 6605613, at *10; Jensen v. Young, No. 4:18-CV-04041, 2019 WL 653062, at *6 (D.S.D. Feb. 15, 2019).  Using government resources and actuarial tables, an 18-year-old's life expectancy (Quevedo's age at time of sentencing) appears to range from the age of 71.9 to 85 years.  26 C.F.R. § 1.72–9 at tbl.I (providing

10

18-year-old male would live 53.9 more years, or to the age of 71.9); 26 C.F.R. § 1.401(a)(9)–9 (providing 18-year-old male would live 67 additional years, or to the age of 85); SSA, Actuarial Life Table, http://www.ssa.gov/oact/STATS/table4c6.html (last visited Feb. 1, 2019) (providing 18-year-old male would live 58.97 additional years, or to the age of 76.97). Thus, Quevedo's initial parole eligibility date at age 62 years is within his life expectancy.

However, because this date is 9.9 years from his minimum life expectancy, Quevedo argues this does not give him a "meaningful opportunity" for release under Graham. But Graham does not require South Dakota "to guarantee eventual freedom to [Quevedo]." Graham, 560 U.S. at 75. Applying Graham here, what South Dakota must do is afford Quevedo "some meaningful opportunity to obtain release *based on demonstrated maturity and rehabilitation*." Id. (emphasis added). Here, Quevedo is eligible for parole within his lifetime, though the approximate lengths of that life vary. This Court has previously found no violation of Graham or Miller for a person convicted as an adult for a murder committed as a juvenile who would be released between ages 59 and 65 with a life expectancy of 72. Boneshirt, 2014 WL 6605613, at *10. Under South Dakota's current parole-eligibility system, Quevedo will have a meaningful opportunity to show that he has matured and has rehabilitated himself within his expected lifetime. See Springer, 2015 WL 6550876, at *8. When Quevedo is 62, he will be "entitled to a hearing with the Board of Pardons and Paroles to present [an] application for parole." SDCL § 24-15-8. Quevedo will be paroled if he can demonstrate that he has been confined for a length of time sufficient to rehabilitate himself, is no longer a danger to society, and has secured employment for the expected parole period in an environment where he will be free from criminal influences. Id. Unlike the petitioner in Graham, Quevedo will have the opportunity to demonstrate that the bad acts he committed as a juvenile are not representative of his character. Graham, 560 U.S. at 79 (emphasizing that

Graham's sentence "guarantee[d] he will die in prison . . . even if he spends the next half century attempting to atone for his crimes and learn from his mistakes"). If parole is denied, Quevedo will be able to reapply eight months later. SDCL § 24-15-10. Quevedo's parole eligibility presents a realistic and meaningful opportunity, perhaps even multiple opportunities, to obtain early release in his lifetime. Quevedo will have an opportunity to demonstrate that since his incarceration he has matured and has been rehabilitated. Unlike in Graham, it was not determined "at the outset" that Quevedo was incapable of rehabilitation. Graham, 560 U.S. at 74, 79.

Even if Quevedo's sentence were somehow the equivalent of a life sentence, Miller expressly left open the question of whether a life sentence without parole was categorically barred for juveniles who commit murder. Miller, 567 U.S. 479 ("Because that holding [requiring individual sentencing determinations] is sufficient to decide these cases, we do not consider [the petitioners'] alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger."). Miller did not preclude the possibility that some juvenile homicide offenders rightfully may deserve a sentence of life in prison without parole; it only required that a "judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Id. at 489.

Because Quevedo was convicted of murder, did not receive a sentence of life without parole, and has the opportunity for parole during his life expectancy, the sentence imposed on Quevedo does not violate Graham or Miller. Therefore, Quevedo's first ground for relief is denied and the State's motion to dismiss on this ground is granted.

## 2. Ground II—Disproportionate Sentence in Violation of the Eighth Amendment

Quevedo next argues that his sentence of ninety years is disproportionate to the crime committed. This determination is made under the particular circumstances of Quevedo's case. Running v. United States, 81 F. Supp. 3d 781, 792 (D.S.D. 2015). In the context of a case-particular challenge to a term-of-years sentence, the Supreme Court has explained that the Eighth Amendment "contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" Graham, 560 U.S. at 59–60 (quoting Harmelin v. Michigan, 501 U.S. 957, 997, 1000–01 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).

Determining whether a particular sentence for a term of years violates the Eighth Amendment involves a two-step analysis. Id. at 60. First, courts must compare the gravity of the crime to the severity of the penalty to determine whether an "inference of gross disproportionality" exists. Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J. concurring in part and concurring in the judgment)). Only in the "rare case" that such an inference arises do courts proceed to the second step—comparing the defendant's sentence to sentences received by other defendants convicted of the same crime. Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J. concurring in part and concurring in the judgment)). "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." Id. (alterations in original) (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J. concurring in part and concurring in the judgment)).

To evaluate the gravity of a crime, courts consider the defendant's culpability and the harm or threat of harm to the victim or society. Henderson v. Norris, 258 F.3d 706, 709 (8th Cir. 2001);

13

Running, 81 F. Supp. 3d at 792–93. To adequately determine whether there is a grossly disproportionate sentence based on the gravity of the crime, the facts of the offense must be detailed. According to the Supreme Court of South Dakota:

> Carlos Quevedo spent the evening of January 17, 2017, ingesting cold medicine, alcohol, and marijuana with his friends in Rapid City. Quevedo and his friends also stole food and alcohol from two local convenience stores and went through unlocked cars looking for items to steal. Quevedo's friend, Cody Grady, found a knife in one of the cars, but Quevedo took it from him because he thought Grady was too intoxicated to carry a weapon.
>
> As the evening progressed into the early morning hours of January 18, Quevedo and Grady decided to steal beer from another local convenience store. The store's surveillance video shows Quevedo and Grady walking into the store and the events that followed. Grady's first attempt to steal a case of beer was thwarted by the store's clerk, Kasie Lord, who took the case of beer away from him and placed it behind the counter. Grady then went back and grabbed another case of beer. Lord positioned herself in front of the door and called 911. As she began to struggle with Grady to recover the second case of beer, Quevedo started stabbing Lord in the back with the stolen knife. Lord can be heard on the 911 call asking Quevedo, "What are you doing? Are you stabbing me?" Lord then tells him to "Stop it! You've got the beer!" and begins screaming as Quevedo stabs her. Quevedo can be heard saying, "Shut the fuck up, bitch."
>
> Freed from Lord's efforts to intervene, Grady ran from the store with the opened case of beer, dropping cans as he ran. However, Quevedo did not leave. He followed Lord into the parking lot and continued his attack, stabbing her repeatedly before fleeing on foot. Quevedo went to Grady's home, located within one block of the convenience store, where he changed out of the distinctive sweatshirt he wore during the killing and hid it above some drop ceiling tiles.
>
> Law enforcement officers arrived at the convenience store shortly after the stabbing and found Lord lying in the parking lot surrounded by a pool of blood. They noted numerous stab wounds to her chest, abdomen, and back with little to no active bleeding. An ambulance arrived and transported her to the hospital where she later died. Lord's autopsy revealed 38 stab wounds in addition to defensive wounds on her hands.
>
> The officers reviewed the store's surveillance video and followed a trail of loose beer cans and bloody shoe imprints to Grady's home where they apprehended both Quevedo and Grady. Quevedo told the officers that he had blacked out and had no memory of stabbing Lord.

Quevedo, 947 N.W.2d at 403-04.

Quevedo was just over seventeen years old when he committed this crime. Id. at 403; Doc 1 at 13; Doc. 11 at 1; Doc. 12 at 1. Both the sentencing court and the Supreme Court of South

Dakota reviewed the Miller factors. The sentencing court mentioned the brutality of the crime, Quevedo's age, and the fact that had Quevedo been just eight months older would have had a mandatory life sentence. Quevedo, 947 N.W.2d at 405. However, the court also considered mitigating factors including Quevedo's childhood, substance abuse, acceptance of responsibility, maturity as compared to others in his friend group, and his history of caring for his younger siblings. Id. at 405–08. The Supreme Court of South Dakota also mentioned these factors, citing to the sentencing court's analysis. Id. at 411.

The gravity of the crime does not demonstrate that the sentencing court imposed a grossly disproportionate sentence. Though Quevedo was a juvenile at the time of the offense, he is still culpable for the act. Expert testimony showed that Quevedo exhibited normal psychological behavior for a seventeen-year-old. Quevedo was deemed mature for his age, due to his ability to care for his younger siblings and as compared to others in his friend group. Quevedo's relative maturity may have resulted from his hard childhood. The sentencing judge noted that Quevedo "appeared to be the only responsible person in his home." Quevedo, 947 N.W.2d at 407. Quevedo accepted responsibility for his crime and did not use "the circumstances of his upbringing as a reason to equivocate about the level of his culpability." Id. Further, Quevedo's crime of second-degree murder caused the ultimate harm to his victim, Kassie Lord, by killing her in a particularly brutal fashion. Quevedo not only initially attacked Lord as she sought to prevent the theft, but also pursued Lord as she tried to flee into the parking lot to continue stabbing her.

In short, the sentence is not grossly disproportionate. Instead, the Miller factors are found in the sentencing judge's analysis and do not compel a different sentence. Applying the deferential standard required by § 2254, this Court cannot extend Graham, Miller, and other Eighth Amendment jurisprudence to deem Quevedo's ninety-year sentence for second degree murder,

which allows a possibility of parole, to be unconstitutional. Quevedo has not met the high bar required of a § 2254. As such, Quevedo's second grounds are dismissed. As such, the State's motion to dismiss is granted on this issue.

### 3. Ineffective Assistance of Counsel

#### a. Procedural Default

Defendants argues that Quevedo procedurally defaulted his ineffective assistance of counsel claims because he failed to timely seek discretionary review by the Supreme Court of South Dakota after Judge Pfeifle dismissed Quevedo's habeas petition. A state habeas petitioner in South Dakota cannot appeal the dismissal of his petition unless the circuit judge or a justice of the Supreme Court of South Dakota "issues a certificate of probable cause that an appealable issue exists." SDCL § 21-27-18.1. Under § 21-27-18.1, the petitioner has thirty days from the date of final judgment to seek a certificate of probable cause from the circuit judge. Id. If the circuit judge refuses to issue a certificate of probable cause, the petitioner may "file a separate motion for issuance of a certificate of probable cause with the Supreme Court within twenty days of the entry of the circuit judge's refusal." Id.

State rules like SDCL § 21-27-18.1 will not bar a habeas claim unless they are "firmly established, regularly followed, and readily ascertainable." White v. Bowersox, 206 F.3d 776, 780 (8th Cir. 2000); see also Sloan v. Delo, 54 F.3d 1371, 1379–80 (8th Cir. 1995) (explaining that a state law is "adequate" to bar federal habeas review if the rule is clear, does not "thwart the assertion of federal rights," and is firmly established and regularly followed (citation omitted)). SDCL § 21-27-18.1 firmly establishes a readily ascertainable procedural rule for appeal from denial of state habeas petition. The Supreme Court of South Dakota regularly enforces § 21-27-18.1; it has dismissed untimely motions for a certificate of probable cause, Hannon v. Weber, 638

N.W.2d 48, 50 (S.D. 2001) (per curiam) (explaining that the court "dismisses motions for certificate of probable cause that are untimely filed" even when the motions "are filed only one day late"), and refused to consider an issue because the petitioner, having been denied a certificate of probable cause on the issue by the circuit judge, failed to "file a separate motion with" the court requesting a certificate, White v. Weber, 768 N.W.2d 144, 149 (S.D. 2009) (holding that the court did have jurisdiction to consider the issue). This Court previously has concluded that § 21-27-18.1's requirement that state habeas petitioners file a timely motion for a certificate of probable cause with the Supreme Court of South Dakota is an independent and adequate state law ground that bars federal review. Thielsen v. Weber, No. Civ. 10-1029-RAL, 2012 WL 844704, at *3 (D.S.D. Mar. 12, 2012) (holding that state habeas petitioner's claims were procedurally defaulted because he failed to request a certificate of probable cause from the Supreme Court of South Dakota); Two Eagle v. Weber, No. CIV. 10-5035-JLV, 2011 WL 5914021, at *9–10 (D.S.D. Mar. 15, 2011) (same), report and recommendation adopted, No. CIV. 10-5035-JLV, 2011 WL 5914060 (D.S.D. Nov. 28, 2011); see also Wiegers v. Weber, 37 F. App'x 218, 219–20 (8th Cir. 2011) (concluding that prisoner procedurally defaulted his claims by failing to timely appeal the circuit judge's denial of his habeas petition to the Supreme Court of South Dakota).

A state procedural default bars federal habeas review unless the petitioner can demonstrate "cause" for the default *and* actual prejudice as a result of the violation of federal law.[2] Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992) (citations omitted, emphasis added). If no "cause" is found, the court need not consider whether actual prejudice occurred. Id. at 985; Wyldes v.

---

[2] A petitioner's procedurally defaulted claim is barred from federal review unless there is a showing of (1) cause and prejudice or (2) actual innocence. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011). Because Quevedo's allegations do not support an "actual innocence" claim, this Court will only consider whether Quevedo has shown cause and prejudice.

Hundley, 69 F.3d 247, 253 (8th Cir. 1995). "The requirement of cause . . . is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief . . . ." Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992). The habeas petitioner must show that "some objective factor *external to [petitioner]* impeded [his] efforts." Id.

A petitioner may show cause by demonstrating that the factual or legal basis for a claim was not reasonably available to the petitioner at the time or that there was interference by officials which prevented the petitioner from exhausting his state remedies. Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner's pro se status and ignorance of the law are not sufficient cause to excuse a procedural lapse in failing to pursue state court remedies. See Stewart v. Nix, 31 F.3d 741, 743 (8th Cir. 1994); Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

Quevedo claims that he did not file a certificate of probable cause after the circuit court entered its judgment against him in his state habeas action because he did not receive the final page of the memorandum decision alerting him that the action was dismissed. However, Quevedo filed a motion and amended motion for a certificate of probable cause with the Seventh Judicial Circuit and a notice of appeal of the denial of the motion for certificate of probable cause on July 26, 2021. Habeas Case, 21-540 at 78–91. In his notice of appeal Quevedo states that he "does hereby appeal to the Supreme Court of the State of South Dakota from the whole of the MEMORANDUM DECISION dated and filed on July 12, 2021." Doc. 1-1 at 46. Quevedo claims he only received this information from his mother and not the court itself, so notice of the decision was inadequate. Doc. 1-1 at 65; Habeas Case, 21-540 at 81. Regardless of the notice provided by his mother, the last paragraph of page 11 of the decision, which Quevedo admits to having received states: "In sum, Petitioners has failed to show that [trial counsel] provided ineffective assistance of counsel.

Consequently, Petitioner has failed to state a claim upon which relief can be granted and the Petition is subject to dismissal." Habeas Case, 21-540 at 123; Doc. 1-1 at 39. Quevedo had notice of the denial of his claim and took actions to vindicate his rights, though through an incorrect route. First, by filing the correct motion with the incorrect court and then filing the incorrect motion, which, had either been in compliance with SDCL § 21-27-18.1, would have been timely. The proper course of action is clearly outlined in the plain language of SDCL § 21-27-18.1. Thus, Quevedo, through the decision received and notice received from his mother, had enough information to seek a timely certificate of probable cause, but he failed to take the correct action.

Quevedo also claims the failure to comply was due to him being pro se. In this case, the decision denying the certificate of probable cause was entered on July 12, 2021. To comply with SDCL § 21-27-18.1, Quevedo would need to file a motion for a certificate of probable cause with the South Dakota Supreme Court no later than August 2, 2021. Quevedo attempted to appeal Judge Pfeifle's decision denying the certificate of probable cause on July 26, 2021; however, because that was a notice of appeal and not a motion made to the Supreme Court of South Dakota, as required by statute, the court dismissed the appeal. Quevedo did not file a proper motion before the Supreme Court of South Dakota until December 2021, well after the twenty-day limitations period. While this procedural distinction may seem minor to a non-legally trained litigant, the statute in this case is plain on its face and clearly outlines the proper procedure. As such, the pro se status of Quevedo does not excuse his procedural lapse. Therefore, Quevedo's ineffective assistance of counsel claim is procedurally barred and the State's motion to dismiss must be granted.

### b. Merits of Ineffective Assistance of Counsel Claim

Even if Quevedo had not procedurally defaulted his ineffective assistance of counsel claim, that claim does not justify granting him the relief sought. The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 339 (1963); Johnson v. Zerbst, 304 U.S. 458, 459 (1938); Powell v. Alabama, 287 U.S. 45, 63 (1932). To establish a claim of ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet this two-pronged Strickland standard, the petitioner must show that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005).

The first part of the test "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). The petitioner must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998) (quoting Strickland, 466 U.S. at 689). Courts are not to "second-guess" trial strategy. Williams, 452 F.3d at 1013. "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996).

"The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error . . . ." Williams, 452 F.3d at 1013. This means proving that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (cleaned up and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (cleaned up and citation omitted). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Ford v. United States, 917 F.3d 1015, 1021 (8th Cir. 2019) (cleaned up and citation omitted). "Because the defendant must satisfy both prongs of the Strickland test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong." Id.

Quevedo claims that his trial counsel was ineffective based on his advice relating to the plea agreement. Doc. 1 at 8. Quevedo claims that he was induced into taking the plea agreement because his counsel told him that it was the only way Quevedo would not die in prison. Doc. 1 at 8. Trial counsel based this recommendation on the fact that if Quevedo was convicted on multiple charges, the judge could impose a term-of-years sentence on each count and have the sentences run consecutively. Doc. 1 at 8. Quevedo claims that such sentencing would not have been constitutional and that counsel's error in advice was so egregious that he essentially had no counsel and was prejudiced by the result. Doc. 1 at 13.

However, it appears that Quevedo's trial counsel was not ineffective in his advice. The Eighth Circuit just upheld the Minnesota Supreme Court's ruling that consecutive sentences for juveniles does not violate Miller, as the focus of the Supreme Court's ruling in Miller was the "proportionality when finding mandatory life-without-parole sentences for juveniles to be unconstitutional." See Ali v. Roy, 950 F.3d 572, 574–75 (8th Cir. 2020). Though the inmate in Ali committed multiple murders, the Eighth Circuit did not limit its holding to multiple-murder cases, but reasoned that the consecutive sentences for a juvenile on separate charges are acceptable

if proportional to the crime. Id. at 575–76. Because consecutive sentences for a juvenile in some circumstances is not unconstitutional, the advice given by counsel to Quevedo was not unreasonable.

Given the brutality of Quevedo's crime, it is not out of the realm that a sentencing judge would impose consecutive sentences. Moreover, Quevedo's trial counsel legitimately could fear that if Quevedo did not plead guilty, he would not only be convicted, but also receive a sentence where he would die in prison. After all, South Dakota law dictated a sentence of life without parole if Quevedo were convicted of the first-degree murder charge. SDCL § 22-6-1. Quevedo's crime was caught on camera, leaving Quevedo little defense on the facts to the murder charge. These facts, taken with the Eighth Circuit's recent ruling, indicates that trial counsel rather than being ineffective provided what may have been sound advice relating to Quevedo's potential sentence if he were to go to trial. Even if Quevedo's third ground for relief was not procedurally defaulted, it does not provide justification for relief under § 2254.

### III. Conclusion

Based on the foregoing reasons, it is

ORDERED that the Defendants' Motions to Dismiss, Doc. 11; Doc. 12, are granted.  It is further

ORDERED that Quevedo's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Doc. 1, is denied.  It is finally

ORDERED that no certificate of appealability issues because there is an absence of a substantial showing of the denial of a constitutional right to justify issuance of such a certificate under 28 U.S.C. § 2253. However, Quevedo may request a circuit judge to issue a certificate under Rule 22 of the Federal Rules of Appellate Procedure.

DATED this 15th day of November, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE